# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**LAURA A. FRAIN,**
        **Petitioner,**

**v.**                                              **Case No.   3:05cv/456/MCR/MD**

**WALTER A. MCNEIL,[1]**
        **Respondent.**

_____

## ORDER and
## REPORT AND RECOMMENDATION

**Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 13) to which petitioner has replied (doc. 20).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

_____

**[1] Walter A. McNeil succeeded James R. McDonough as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d)(1).**

## BACKGROUND AND PROCEDURAL HISTORY

Eric Seese died of a drug overdose on May 21, 2001.  The events leading up to this tragedy were recounted by petitioner when she entered her guilty plea.  In the late evening or early morning of May 20-21, 2001 petitioner and her male friend, Roger Livingston, met another couple, Eric and Holly Seese at a lounge.  Petitioner and Livingston were invited to the Seese home for drinks, and followed the couple to their home.  While there the discussion turned to drugs, and Livingston produced some OxyContin pills, which petitioner "prepared" and put into a syringe.  She handed the syringe to Mrs. Seese who went with her husband into the bedroom.  Eric Seese suffered a drug-induced reaction that resulted in an apparent cardiac arrest.  CPR by petitioner resulted in signs of some breathing and a pulse.  Mrs. Seese called EMS.  Livingston, petitioner and Mrs. Seese then concocted a story in an effort to deflect suspicion from themselves.  They agreed that they would tell EMS that petitioner was a visiting friend and that Eric Seese had purchased drugs at a bar and said he was going to take them orally.  The next thing they knew Eric was in trouble.  Livingston, who had just been released from prison, would not be mentioned, and he hid somewhere in the house.

Eric Seese was still alive when EMS arrived, and Mrs. Seese went with her husband to the hospital.  She asked petitioner to stay and look for her cat.  While there petitioner "shot up" an OxyContin pill.  Soon law enforcement arrived looking for Livingston, apparently because Mrs. Seese had told them the truth rather than stick to the concocted story.  The officer, Detective Kilgore, told petitioner that if she didn't want to go to jail for first degree murder, she would tell him where Livingston was, which she did.  She also gave Det. Kilgore a true statement on what had happened. Petitioner and Livingston were taken to the sheriff's office, although they were not arrested, and petitioner again gave a statement in which she again truthfully told what had happened.  (Doc. 13, ex. B, pp. 121-130).

Petitioner was later indicted by a grand jury in the Circuit Court of Escambia

County, Florida and charged with first degree murder.  She ultimately pleaded to manslaughter, and was sentenced to twelve years in prison followed by three years probation (ex. B, pp. 174-175).[2]  Petitioner did not reserve any issues for appeal.  She was advised in accordance with Florida Law that her rights to appeal were limited to fundamental issues and sentencing issues.

Petitioner appealed, and her attorney filed an *Anders*[3] brief.  Petitioner filed a *pro se* brief, arguing that her plea was involuntary, that the court erred in preventing her from preparing a defense and in granting the state's motion *in limine*, and that there was prosecutorial misconduct based on her prosecution without probable cause (ex. D).  The appellate court affirmed without opinion.  *Frain v. State*, 894 So.2d 246 (Fla. 1st DCA 2004) (Table).

Petitioner then filed a motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 which raised four claims of ineffective assistance of counsel.  The trial court summarily denied the motion in a written order, with attached documentation (ex. H, pp. 36-110).  Plaintiff's appeal of this order was unsuccessful, *Frain v. State*, 913 So.2d 601 (Fla. 1st DCA 2005) (Table).  This federal habeas petition followed.  Respondent concedes that the instant petition is timely (doc. 5, p. 13).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state

---

[2]Hereafter, all references to exhibits will be to those attached to doc. 13, unless otherwise noted.

[3]*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d  493 (1967).

court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> **(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–**
>
> > **(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or**
> >
> > **(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.**

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> **In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached**

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L.Ed.2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L.Ed.2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must

independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti v. Quarterman*, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## PETITIONER'S GROUNDS FOR RELIEF

### Grounds 1-3

Three of petitioner's grounds for relief are based on claims that she was denied her constitutional right to the effective assistance of counsel.  In order to

prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:   (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance. *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are

subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

    a.   <u>Counsel's failure to move to suppress inculpatory statements.</u>

    Petitioner first contends that counsel failed to move to suppress statements she gave where "law enforcement used deceptive tactics on an impaired defendant under the influence of the drug oxycodine (sic) while being interrogated. . . ." (Doc. 1, p. 4). The foregoing is the entirety of the supporting facts in her petition. In her reply she says that Det. Kilgore mislead her by not arresting her.

    <u>State Court Decision</u>

    This issue was presented to the state court in petitioner's Rule 3.850 motion (ex. H, pp. 1-7). There, petitioner contended counsel was ineffective because he did not move to suppress her inculpatory statements knowing that (1) the statements were given while petitioner was under the influence of a controlled substance and (2) law enforcement used strategies designed to trick or cajole her into talking (*id.* at 4-5). The alleged trickery was when Det. Kilgore threatened her with jail if she did not tell where Livingston was hiding, and testify that she saw Eric Seese inject himself.

    The Rule 3.850 court rejected this claim on procedural grounds. Specifically, the court held that where a defendant is sentenced pursuant to a negotiated plea agreement, a claim that counsel was ineffective for failing to move to suppress is procedurally barred, citing *Dean v. State*, 580 So.2d 808 (Fla. 3d DCA 1991).[5]

    <u>Federal Review of State Court Decision</u>

    It is well-established state and federal law that guilty pleas waive all but

---

[5]In *Dean*, the court held that a defendant who pleaded guilty was precluded from raising a claim of ineffective assistance for failure to move to suppress his involuntary confession, because the defendant was attempting to go behind his guilty plea and raise a claim not cognizable on the merits, by casting it in the guise of an ineffective assistance of counsel claim. *Dean v. State*, 580 So.2d at 810.

jurisdictional claims up to the time of the plea.  *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (holding that a guilty plea represents a break in the chain of events that preceded it in the criminal process); *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991); *Parker v. State*, 603 So.2d 616 (Fla. 1st DCA 1992); *Dean v. State, supra*.  This waiver includes constitutional claims.  *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived); *Dermota v. United States*, 895 F.2d 1324 (11th Cir.) (double jeopardy claim waived), *cert. denied*, 498 U.S. 837 (1990).

Once petitioner entered her plea, the scope of the federal habeas inquiry was limited to whether the plea was voluntarily and intelligently made, and this court is precluded from inquiring into any antecedent constitutional infirmities.  *See Tollett*, 411 U.S. at 266.  Accordingly, Ground One is not reviewable by this court unless petitioner establishes that her plea was involuntary, a burden that, for reasons discussed below, the court concludes she has not met.

Petitioner pleaded guilty to a lesser included offense pursuant to a negotiated plea.  The written plea agreement provided that petitioner would plead guilty to manslaughter; that she would receive a guideline sentence with no downward departure, maximum fifteen years; that she had read the indictment and understood the charges; that she had read the terms of the plea agreement, which were explained to her and which she understood; that she was satisfied with her attorney's advice and services; that she was not compelled to plead by force, duress, threats or pressure; that she was waiving her listed constitutional rights, including the right to appeal the issue of guilt; and that she had reviewed the facts with her attorney and agreed that there were sufficient facts to justify her plea (ex. H, p. 41).

At the plea colloquy petitioner verbally confirmed the foregoing, and gave the court her own version of the facts, as summarized in the Background and Procedural History, above (doc. 13, ex. B, pp. 121-130).  She also told the court that she had

enough time to consult with her attorney about her decision to plead, and that she was satisfied with the advice given (*id.* at 118).  Now petitioner tells this court that the opposite is true -  that her attorney knew she had been tricked into giving inculpatory statements while under the influence of drugs but did nothing about it. That position is untenable.  Petitioner's sworn testimony at the plea colloquy is presumed to be truthful.  "In analyzing the constitutionality of a guilty plea, a reviewing court must determine that the plea represents 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jones v. White*, 992 F.2d 1548, 1556 (11th Cir. 1993) (quoting *Hill v. Lockhart*, 474 U.S. at 56, 106 S.Ct. at 369).  Additionally, the Supreme Court has determined that "the representations of the defendant . . . [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).  "A reviewing federal court may set aside a state court guilty plea only for failure to satisfy due process."  *Jones,* 992 F.2d at 1556. "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."  *Stano v. Dugger*, 921 F.2d at.  At the time of her plea petitioner knew she had given statements to law enforcement, and, according to her, knew she had been tricked or coerced into doing so, but told the court under oath that she was satisfied with her attorney's representation.  Petitioner's claim therefore fails.

        The second reason that petitioner's claim fails is that she cannot show either deficient performance or prejudice.  Counsel's performance was not deficient because the proposed suppression motion would have failed.  Petitioner was never in custody when she gave statements to law enforcement.  Petitioner told Det. Kilgore what had happened when he first talked to her at the Seese home (ex. B, p.

67).  The investigator's report shows that petitioner and Livingston agreed to go the Sheriff's Office to give recorded statements (ex. B, p. 11).  At the sheriff's office petitioner gave a statement consistent with what she had told Det. Kilgore at the Seese home, although she now claims to have been under the influence (*id.* at 75), and gave a third consistent statement after she was released from drug rehabilitation several months later (*id.* at 75-77).  She confirmed at the plea hearing that she had given three consistent statements, and she does not claim that she was under the influence at the time of the third statement.

Moreover, plaintiff does not even claim that the police failed to give her any warning.  In her reply brief she equivocates, saying that "[t]he record in the instant case is unclear of whether Ms. Frain was given initial <u>Miranda</u>[6] warnings."  (Doc. 20, p. 3).  Such a claim is without substance, and does not prove that a motion to suppress would have been successful.  A search of the record discloses no instance when petitioner ever claimed that she was not given *Miranda* warnings.  And nowhere does the record show that petitioner was arrested or otherwise in custody before the indictment was issued, so any pre-arrest, non-custodial statements would not have been suppressed regardless of what her attorney might have done.  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment."  *Chandler, supra.*

Finally, petitioner claims that she was tricked into confessing when Det. Kilgore promised her she would not be arrested.  There is nothing in the record to support this but her after-the-fact self-serving statement.  At the plea hearing she told the court that when Det. Kilgore arrived at the Seese residence he said "if you don't want to go to jail for first degree murder, you'll tell me where the man

---

[6]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Livingston] is." (Ex. B, p. 128).  She said nothing about any other promises or alleged trickery except that Det. Kilgore told her later that she was looking at a paraphernalia charge at worst (id. at 129).  The Grand Jury was not given the case until the toxicology report came in, well after Eric Seese's death, and petitioner was not arrested until the indictment was returned (id. at 72-73).  She has given this court no other facts to support her claim of trickery.  This court will not "'blindly accept speculative and inconcrete claims . . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.  *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[7]  Thus, "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding.  *United States v. Jones*, 614 F.2d 80 (5th Cir. 1980).

Petitioner's proposed motion to suppress had no hope of success, so not only does she not show deficient performance, she cannot show prejudice.  In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

In summary, this claim is not reviewable by this court.  If it were, petitioner is

---

[7]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

not entitled to relief.  She has failed to show that her attorney's performance was deficient, and she cannot show prejudice.  The Rule 3.850 court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*. Petitioner is not entitled to federal habeas relief, and the writ should not issue.

> **b.** <u>Counsel's misapprehension of the law and use of fear tactics to induce petitioner to take the state's plea offer.</u>

For her second ground for relief, petitioner contends that counsel misadvised her that she did not have a defense when Mr. Seese died as the result of negligence by EMT personnel.  Her basic contention is that the paramedics failed properly to insert a breathing tube, which caused Eric Seese's death independent of the drug he injested.

> <u>State Court Decision</u>

The Rule 3.850 court rejected this claim on the grounds that petitioner's proposed defense was not available because Florida law holds that intervening medical negligence does not excuse the original act that set in motion the events leading to the decedent's death (ex. H, p. 38).

> <u>Federal Review of State Court Decision</u>

Petitioner's argument that the state court unreasonably applied *Strickland* obviously depends upon this court determining counsel's performance was deficient, but first this court would have to conclude that the state court misinterpreted state law.  In *Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338 (11th Cir. 2005) and *Callahan v. Campbell*, 427 F.3d 897 (11th Cir. 2005), the Eleventh Circuit addressed similar issues.  In *Herring*, the petitioner argued his counsel was ineffective for failing to make an objection, based on state law, to the introduction of non-statutory aggravating evidence at the penalty phase of his trial. *Id.* at 1354-55. The Florida Supreme Court concluded that the proposed objection would have been overruled and therefore counsel was not deficient. *Id.*  The Eleventh Circuit held:

> The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'

*Id.* (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Similarly, in *Callahan*, the petitioner contended his counsel was ineffective for failing to argue that, based on the Alabama state courts' interpretation of the Double Jeopardy Clause in three state court cases (*Hull v. State*, 607 So.2d 369 (Ala. Crim. App. 1992), *Ex parte Hergott*, 588 So.2d 911 (Ala. 1991), and *Ex parte Callahan*, 471 So.2d 463 (Ala. 1985) (*Callahan I*)), the introduction of petitioner's statements at his second trial was precluded. The Alabama Court of Criminal Appeals concluded that the petitioner's claim relied on an erroneous interpretation of state law and rejected it. The Eleventh Circuit held:

> [T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on *Callahan I*, *Hull*, and *Hergott* – the objection would have been overruled. *Callahan* [*v. State*], 767 So.2d [380,] 386-87 [(Ala. Crim. App. 1999)] (*Callahan III*). Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.
>
> Moreover, we are convinced [petitioner] could not satisfy the prejudice prong of *Strickland*. [Petitioner's] ability to demonstrate prejudice is again foreclosed by the state court's decision in *Callahan III*. Even if [petitioner's counsel] was ineffective for failing to make the objection, the state court has told us that if he did make the objection it would not have been successful. [Petitioner] cannot be prejudiced by his counsel's failure to make a losing objection.

427 F.3d at 932.

Here, as in *Herring* and *Callahan*, the state courts have answered the question of what would have happened had petitioner's counsel used a medical malpractice defense. The defense would have failed under state law. The Rule 3.850 court noted

that "any negligence on the part of the emergency personnel does not break the chain of causality between the Defendant's distribution of Oxycotin [sic] and the death of the victim[,]" citing *Hallmen v. State*, 371 So.2d 482 (Fla. 1979), *Tunseil v. State*, 338 So.2d 482 (Fla. 3d DCA 1976), and *Rose v. State*, 591 So.2d 195 (Fla. 4th DCA 1991) (ex. H, p. 38).  Indeed, that has been the law in Florida for nearly a century, when the Florida Supreme Court first announced the rule:

> The defendant cannot escape responsibility for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment.  The true doctrine is that, where the wound is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection against the charge of unlawful homicide.

*Johnson v. State*, 64 Fla. 321, 59 So. 894, 895 (1912).  Petitioner prepared the drug knowing it was going to be injected into Eric Seese, and Mr. Seese died of a drug overdose.  That the EMT personnel "might possibly have averted" his death by treating him better would not have insulated the person who played a part in putting the event in motion.  The Florida courts have held that *Johnson* and its progeny apply to the facts of this case, and that the defense petitioner proposes was not a viable one.  Therefore, counsel cannot be faulted for advising petitioner that medical malpractice was not a valid defense.  And since counsel's advice was a correct statement of Florida law, petitioner cannot show prejudice.

The state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

c.    Counsel's failure to move to dismiss the indictment.

Petitioner next says that counsel should have moved to dismiss the indictment.  The basis for this claim is that the indictment accuses her of distributing a drug which caused Eric Seese's death, when in fact medical negligence caused his

death.  This is merely a slight variation of the claim raised in Ground Two, and the result is the same.  The Rule 3.850 court made the same holding (ex. H, p. 38), and the state court's ruling on the applicability of Florida law produces the same result here.  It is not for this court to say that the Florida court was incorrect in its interpretation of Florida law.  *Herring, Callahan, supra.*  Petitioner is not entitled to federal habeas relief.

<u>Ground 4</u>

As her final ground for relief, petitioner asserts she was denied due process and a fair trial when the court granted the State's motion in limine and prohibited the introduction of critical defense evidence (the testimony of two doctors).  Petitioner states she exhausted this claim by raising it on direct appeal in grounds 2 and 3 of her *pro se* brief (doc. 1, p. 5).  She states in her reply that she also raised the claim in her Rule 3.850 motion as ground 4 (doc. 20, p. 8).  Respondent contends this claim is procedurally defaulted because: (1) the state court was precluded from reviewing it on direct appeal because petitioner pleaded guilty and did not reserve the issue for appeal, and (2) petitioner did not properly present a Federal due process claim to the Rule 3.850 court; rather, she raised an ineffective assistance claim based on counsel's failure to list two doctors as defense witnesses.  Respondent is correct.

Assuming, without deciding, that grounds 2 and 3 of petitioner's *pro se* direct appeal brief presented a Federal due process claim,[8] petitioner cannot be said to have properly exhausted her state court remedies by this effort.  Florida law provides that a defendant may not appeal from a guilty plea except in very limited circumstances.  One such exception is when a defendant "expressly reserve[s] the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved."  Fla.R.App.P. 9.140(2)(A).  To be legally

---

[8]In her brief, petitioner presented two issues relating to the motion *in limine*:  that the trial court's ruling on the motion *in limine* prevented her from presenting a defense (ex. D, pp. 15-18), and that the ruling was contrary to state law  (*id.*, pp. 18-20).

dispositive, "an issue must dispose of the case so that there will be no trial, regardless of whether the appellate court affirms or reverses" the lower court's decision. *Whitsett v. State*, 913 So.2d 1208, 1212 (Fla. 4th DCA 2005). The order on the motion *in limine* was not dispositive of the case, and even assuming it was, petitioner did not expressly reserve the ruling for appeal. Therefore, the issue was not preserved, and this court must assume from the appellate court's summary affirmance that the state court enforced the procedural bar.[9] *See, e.g., Whitsett*, 913 So. at 1212 (holding that defendant was not entitled to appellate review of challenge to motion in limine excluding defense evidence, where defendant entered no contest plea to charge and order granting motion in limine was not dispositive of the case); *see also, e.g., Wilson v. State*, 885 So.2d 959, 960 (Fla. 5th DCA 2004) (holding that trial court's denial of defendant's motion to suppress her confession was not a dispositive order, and thus District Court of Appeal lacked jurisdiction over defendant's appeal filed after defendant pleaded nolo contendere; prosecutor refused to stipulate that denial of suppression motion was a dispositive order, and only prior dispositive orders could be appeal following a nolo contendere plea).

Nor did petitioner properly exhaust the Federal due process claim in the Rule 3.850 proceeding. In her Rule 3.850 motion, petitioner told the court that her counsel was ineffective for not listing two doctors as witnesses, and that as a result the state's motion *in limine* was granted, which prevented her from using medical testimony in her defense. The court rejected this claim as factually and legally unsupported, holding:

---

[9]This court cannot presume that a Florida court has ignored its own procedural rules and reached the merits of a case when the court issues a summary denial of relief, i.e., an unexplained decision. Such a ruling does not suggest that the state court resolved the issue on the federal claim presented. *See Coleman*, 501 U.S. 722, 735-36 (1991); *Kight v. Singletary*, 50 F.3d 1539, 1544-45 (11th Cir. 1995) (applying procedural bar where state court's summary denial did not explain basis for ruling; "Where, as here, a clearly meritorious claim is procedurally barred and the state court denies relief without opinion, the most reasonable assumption is that . . . the state court . . . enforced the procedural bar.") (internal quotation marks and citation omitted); *Tower v. Phillips*, 7 F.3d at 209 (applying procedural bar where state court did not rule on claims presented).

Dr. Kirby was listed as a defense witness prematurely and was strategically withdrawn to be reoffered at a later date, to protect his confidentiality. Although the defense failed to reoffer Dr. Kirby within the time prescribed by the court, the State's motion to exclude Dr. Kirby was denied on April 20, 2003, and rehearing was denied on May 14, 2003. Therefore, at the time that Defendant plead to the charges, Dr. Kirby was not excluded from testifying at defendant's trial. Therefore, the instant claim regarding Dr. Kirby is conclusively refuted by the record.

(Ex. H, p. 39). The Rule 3.850 court also held that petitioner's claim concerning another proposed expert, Dr. Dmytrenko, was insufficiently pled because she did not offer the substance of his testimony, and to the extent that the court could glean from her argument that petitioner wanted Dr. Dmytrenko to testify concerning the actual cause of death, "no medical malpractice will break the chain of liability in this case." (*Id.* at 39-40). The foregoing demonstrates that the issue raised and decided in the Rule 3.850 proceeding was an ineffective assistance of counsel claim, not one based on trial court error as petitioner contends here.

Petitioner's Federal due process claim based on the trial court's ruling on the motion *in limine* is procedurally defaulted. Petitioner has made none of the requisite showings to excuse the default. Therefore, she is not entitled to federal habeas relief.

Even if the matter were reviewed here *de novo*, it would fail. Petitioner asserts that the state court denied her the right to call medical witnesses in her defense, but as shown above, the state court has held that at the time of the plea Dr. Kirby's testimony was not excluded, and in any event, medical testimony would not have relieved petitioner of responsibility for Eric Seese's death. Petitioner cannot succeed in showing trial court error in applying Florida law to the facts of this case. Although she strenuously argues that medical negligence in these circumstances is not a foreseeable event, and that lack of forseeability might excuse her act, she has not pointed to any Florida precedent holding that medical negligence is not

foreseeable.  There is none.  The Florida Supreme Court held to the contrary in 1912 when it stated that "mere erroneous treatment . . . will afford the defendant no protection against the charge of unlawful homicide."  *Johnson v. State*, 64 Fla. 321, 59 So. 894, 895 (1912).


## CONCLUSION

When petitioner presented her claims to the state courts, those courts held that the claims were either procedurally defaulted or were foreclosed by state law. It is not this court's function to second guess Florida courts on the interpretation of Florida law.  Neither is it this court's function to guess what the Florida court might have determined if a defaulted claim had been fairly presented.  The foregoing discussion goes further, however, and shows that even if there were no procedural bars, petitioner's federal habeas claims still lack merit.  Therefore, the state courts' rulings, individually or together, did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1); *Williams, supra*.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Walter A. McNeil has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

That the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in the case of *State of Florida v. Laura Ann Frain*, in the Circuit Court of Escambia County, Florida, case no. 01-5514, be DENIED, and that this cause be DISMISSED and the clerk be directed to close the file.

At Pensacola, Florida this 13th day of November, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**